PEOPLE *ex rel.* UTICA, CHENANGO AND CORTLAND RAILROAD Co. v. HITCHCOCK *et al.*, Commissioners, etc., appellants.

*Railroad aid bonds — authority to subscribe for stock conditionally — estoppel — official bond of commissioners.*

A town authorized the issue of its bonds to the relator, in exchange for relator's stock, upon certain specified conditions. Three commissioners were appointed, and two of them made a subscription for relator's stock, absolute in form, but upon the representation of relator, and their belief that they

could not be compelled to deliver the bonds of the town until they· could make an agreement with the relator, in pursuance of Laws of 1870, chapter 507. Relator did not perform the conditions upon which the bonds were to be issued to it.

*Held*, that the commissioners were not estopped by their subscription, and that relator was not entitled to a peremptory mandamus for the delivery of the bonds.

The offices of commissioners, appointed under chapter 720, Laws of 1873, are not vacated by their omission to make and file their official bonds, until ten days after notice from the supervisor of their town.

APPEAL from an order of special term, awarding a peremptory mandamus, commanding the appellants, commissioners of the town of Pitcher, Chenango county, to issue and deliver to the relator, bonds of their town, in aid of the construction of relator's road, to the amount of $41,900, or proceeds of such bonds to an equal amount.

The return to the alternative writ was as follows :

"We, Norman P. Hitchcock, D. R. Hakes and William Taylor, do answer and return to the supreme court above mentioned:

"1. That we and each of us entered upon the duties of our office and offices, as commissioners of the town of Pitcher, as above mentioned, without making or delivering to the clerk of said town, or to any other person or officer, any bond or bonds conditioned for the faithful discharge of our official duties, or otherwise, and without making or delivering any official bonds whatever; that we have not, nor has either of us, since being appointed as such commissioner or commissioners, given or delivered any such official bond or bonds ; that we have not, nor has either of us, given or delivered any bond or bonds, in pursuance of chapter 270 of the Laws of 1873, or otherwise; that we did not, nor did either of us, know of the passage of said chapter 270, until more than twenty days after its passage ; and that we are advised and verily believe that we are no longer commissioners of said town of Pitcher ; that we have no authority to issue or deliver the said bonds mentioned in said writ, and that our respective offices have become vacant.

"2. That the town of Pitcher proceeded to the bonding mentioned in said writ, and the tax payers mentioned in said writ made the application to the county judge, and set forth in said writ, and signed the petition in said proceeding before said county judge, mentioned in said writ, upon the express assurance, promise and guaranty of the Utica, Chenango and Cortland

Railroad Company, its officers and agents, that the bonds of said town should not be delivered to said company, except as follows, to wit: After the road of said company should be completely graded from Cortland to said town of Pitcher, then, as fast and as often as one mile of the road of said company should be graded in said town of Pitcher, and the necessary bridges built, and the same put in readiness for the placing of the ties upon the same, $5,000 in amount of said bonds should be delivered to said company; when the whole of said road through the town of Pitcher, on or near the line, as now located, should be completed and in readiness for the rolling stock, and a substantial depot constructed near the village of Pitcher, and also a substantial depot on the cross-road at North Pitcher, near the grist-mill, then the remainder of said bonds should be delivered to said company. And the said Hitchcock, Taylor and Hakes allege that the tax payers of said town, signing said petition, believed said promises, assurances and guarantees, and relied upon them, and were induced by them to sign said petition, which they otherwise would not have done; that the commissioners of the town of Pitcher have never refused to issue or deliver to said company the said bonds of said town, upon the terms and conditions above mentioned; that on the 10th day of June, 1873, and before this proceeding was commenced, at Pitcher aforesaid, the said Hitchcock, Taylor and Hakes, as commissioners of said town, offered to execute an agreement with said company, in accordance with the aforesaid terms and conditions, and tendered to the president of said company the draft of a written agreement containing said terms and conditions, and offered to issue and deliver to said company said bonds in accordance therewith, if said company would execute said agreement, or a similar one with said commissioners; but said company, by its president, declined to execute the same, or a similar one with said commissioners; and said commissioners and said company could not agree in relation thereto.

" 3. We further allege, that the subscription to said stock, mentioned in said writ, was made by two of said commissioners, on their part, in the county of Cortland, and not in the county of Chenango; that said two commissioners were urged to subscribe for said stock by the officers and agents of the railroad company mentioned in said writ, at the time of such subscription, and were told and assured by them, and by the attorney and counsel of said company, that they, said commissioners, although they should subscribe

for said stock, could not be compelled to deliver the bonds of said town until they could make an agreement with said company, in pursuance of chapter 507 of the Laws of 1870, and the said attorney and counsel showed said two commissioners a copy of said law, to satisfy them that such was the case; that the said two commissioners believed said representations of said attorney and counsel, and relied upon them, and were thereby induced to subscribe for said stock, which they otherwise would not have done without the execution of an agreement, and the giving of some guaranty on the part of said company.

"4. We further allege, that said Utica, Chenango and Cortland Railroad Company was organized for the purpose of constructing and operating a railroad from Utica to Cortland, through the town of Pitcher and the Otselic valley, and for no other purpose; that such was the promise of the officers of said company at the time the said town of Pitcher and the tax payers thereof proceeded to authorize the bonding of said town in aid of the construction of said road; that all that was done by the said tax payers to authorize the bonding of said town as aforesaid was done with the express understanding and agreement, and on the faith of the promise that said road should be constructed and run as aforesaid, and that there should be an unbroken line of road from Cortland through the Otselic valley and said town of Pitcher to Utica.

" We further allege, that it is now the intention of the officers of said company and those having control of its organization, to construct a road from Cortland to Deposit, or some other point in Delaware county, on the New York and Erie Railroad, which road would not run near or benefit the town of Pitcher, and to consolidate with other railroad companies for that purpose, and that negotiations have been already had and steps taken for that purpose; and that if the said bonds of the said town of Pitcher should be procured by said company, they would be used to assist in the construction of said last-mentioned line of road; and that it is now the intention of the officers of said company, when said bonds are procured, to use them to aid in the construction of said last-mentioned line and not to aid in the construction of the road originally intended, and to aid the construction of which said town was bonded.

" We further allege, that the diversion of the means of said company to the construction of said road from Cortland to Deposit or other point on the New York and Erie road, would, in our opinion,

People ex rel. Utica, Chenango and Cortland R. R. Co. v. Hitchcock.

so weaken said company that it could not, if it desired to, construct the road originally intended.

"5. We further answer and allege, that it was the express understanding and agreement between said company, its officers and agents, and the tax payers of said town of Pitcher, at the time the proceedings were had on their part to bond said town; that the bonds of said town, or the proceeds thereof, should, be used on that portion of the road running through said town of Pitcher; that all the bonds of said town that have been thus far delivered to said company, by any of the commissioners of said town, have been so delivered upon the express agreement made between the officers of said company and the commissioners so delivering them — that said bonds should be so used and not otherwise; but we allege, that it is now the intention of the officers of said company to use said bonds, if they can procure them, to aid in the construction of the line from Cortland to the New York and Erie Railroad, and to procure the rails to lay upon that portion of said line between Cortland and McGrawville, and not to use any portion of same in said town of Pitcher.

" Wherefore, we ask that the court do not compel us to issue or deliver said bonds to said railroad company, but leave said company to apply to the general term of the court, in pursuance of chapter 507 of the Laws of 1870, as amended by chapter 925 of the Laws of 1871."

The case being heard on the return of the writ, a peremptory mandamus was ordered to issue, directing the defendants to issue the bonds in question forthwith to the relator, from which order defendants appealed.*

*E. H. Prindle,* for appellants.

*R. H. Duell,* for relator.

* The following is the opinion delivered at special term:

BOARDMAN, J.  Upon return to alternative writ, a peremptory writ of mandamus is now issued to the defendants to issue the bonds of the town of Pitcher to the relators.

This decision is based upon the following conclusions of law, to wit:

1st. The offices of said commissioners are not vacated for the reason that ten days have not elapsed after notice to them from the supervisor of Pitcher, under the law of June 11, 1873.  Until they have neglected to file bonds for ten days after *such notice*, their offices do not become vacant.

2d. Three commissioners having, in fact, united in subscribing for this stock for the town, as appears by the stock subscription now present, they will not now be heard,

People ex rel. Utica, Chenango and Cortland R. R. Co. v. Hitchcock.

P. POTTER, J. I think the judge at the special term was right in his construction of the act of June 11, 1873, chapter 720, that the offices of the commissioners were not vacated until they had neglected to file their bonds for ten days after notice of the provisions of that act, but I do not concur in the opinion that the subscription for stock by the commissioners is so absolute that it can be enforced in spite of the act of 1870 (chap. 507), and of the amendment of 1873, and that their subscription estops the commissioners from objecting to or questioning the intent to make an improper use by the railroad corporation of the funds to be raised by virtue of such subscription. The statute of 1870 does not limit the time for entering into the agreement between the commissioners with the railroad company, nor is it to be inferred that it can only be made before the subscription is made; but, on the contrary, the power given is expressed in general terms without limitations of time. Besides, the agreement to be made relates to the delivering of the bonds, that is, that the commissioners may enter into a contract or agreement limiting and defining the time when and the proportions in which such bonds or their proceeds shall be delivered, and the places where and the purposes for which the proceeds of such bonds shall be applied or used. The case does not show any unwillingness on the part of the commissioners to make the agreement in accordance with the provisions of the statute, and as they allege in accordance with the previous understanding, but a refusal to act at all and a refusal to deliver the bonds, without any agreement as to the application of the proceeds, or as to the times and proportions in which they shall be delivered. The railroad company claim and the special term held, that the subscribing for the bonds,

as to the time and manner of such subscription, by way of showing that they did not meet and consult together before or at the time of such subscription.

3d. Such subscription, having been made without terms or conditions, is absolute and may be enforced in spite of the law of 1870, ch. 507.

Such law is not applicable to a case where an absolute subscription is made, but only to one where the subscription is founded upon and accompanied by terms and conditions or where there is a refusal to subscribe, for the reason that such conditions cannot be agreed upon.

4th. In like manner an absolute subscription estops the subscriber from objecting to or questioning the manner of the use of the proceeds of such subscription by way of defense to the payment thereof. An improper use of the funds of a railroad company can be stopped, but not by way of excuse for the payment of subscriptions.

5th. Verbal agreements, inconsistent with the absolute subscription to stock preceding or accompanying such subscription, will not be heard to contradict or overthrow such subscription.

For these reasons, a preremptory writ will issue directing and commanding the defendants to issue and deliver said bonds forthwith to the relator.

without terms or conditions annexed or connected with the sub-scription, estopped the commissioners from objecting or questioning the use to be made of the proceeds, and from denying the right of the railroad company to demand an absolute delivery of the bonds. This we do not regard as the fair reading, spirit, intent, or even the letter of the statute. The statute seems to have been intended to prevent the fraudulent use or conversion as well as diversion of the funds to an object not intended by the town whose credit has thus been obtained.

The provision is useless if this plain intent can be evaded by such a technicality as that of holding that the commissioners have lost all power to exercise control over the bonds or the proceeds thereof, after a subscription therefor. No language of the statute demands such a construction. And justice and common equity demands that the exercise of a reasonable discretion be continued in the commis-sioners, until they can make such an agreement as shall protect their town against fraud or imposition in the use of its credit and funds. The order of the special term should be reversed.

MILLER, P. J., and PARKER, J., concurred.

*Order reversed, and motion for mandamus denied.*